ADAM PAUL LAXALT
Attorney General
C. WAYNE HOWLE (Bar No. 3443)
Chief Deputy Attorney General
DANIEL P. NUBEL (Bar No. 13553)
Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T:  (775) 684-1227
E:  whowle@ag.nv.gov
    dnubel@ag.nv.gov

MARTA ADAMS (Bar No. 1564)
Special Deputy Attorney General
Adams Natural Resources Consulting Services, LLC
1238 Buzzys Ranch Road
Carson City, Nevada 89701
T:  (775) 882-4201
E:  adamsnaturalresourcesllc@gmail.com

*Martin G. Malsch, Esq.
*Charles J. Fitzpatrick, Esq.
*John W. Lawrence, Esq.
EGAN, FITZPATRICK, MALSCH & LAWRENCE, PLLC
1776 K Street N.W., Suite 200
Washington, D.C. 20006
T:  (202) 466-3106
E:  mmalsch@nuclearlawyer.com
*Special Deputy Attorneys General
*Pro Hac Vice* motions to be filed

*Attorneys for the State of Nevada*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA,<br>                    Plaintiff,<br>          vs.<br>UNITED STATES; UNITED STATES DEPARTMENT OF ENERGY; RICK PERRY, in his official capacity as Secretary of Energy; NATIONAL NUCLEAR SECURITY ADMINISTRATION; and LISA E. GORDON, in her official capacity as Administrator of the National Nuclear Security Administration and Undersecretary for Nuclear Security,<br>                    Defendants. | Case No. _____<br><br><br>**COMPLAINT** |

The State of Nevada (Nevada) complains as follows:

## I. INTRODUCTION

1.    This matter arises out of a final agency action by the National Nuclear Security Administration (NNSA), a semi-autonomous agency within the United States Department of Energy (DOE), that fails to comply with the National Environmental Policy (NEPA), 42 U.S.C.A. §§ 4321, *et seq.*, implementing regulations promulgated by the Council on Environmental Quality at 40 C.F.R. § 1502.9(c)(1), and DOE NEPA regulations at 10 C.F.R. § 1021.314(a).   The final agency action at issue is NNSA's Supplement Analysis, dated July 2018 (attached hereto as Exhibit A), for its Final Complex Transformation Supplemental Programmatic Environmental Impact Statement (DOE/EIS-0236-S4).   This programmatic environmental impact statement (EIS), prepared ten years ago, addressed other federal actions related to NNSA's efforts to transform the nuclear weapons complex into a smaller and more responsive, efficient and secure entity in order to meet national security requirements.   NNSA's Supplement Analysis (SA) claims that no EIS supplement is required for a new proposed action described in the SA and below because it is addressed in previous DOE environmental impact statements, including DOE/EIS-0236-S4.

2.    Defendants' new proposal is to ship one metric ton (about 2,200 pounds) of plutonium from DOE's Savannah River Site, which is located in the State of South Carolina, to the DOE's Nevada National Security Site (NNSS), which is located approximately 90 miles northwest of the City of Las Vegas, Nevada.   According to the SA, it is possible that Defendants may also ship the same plutonium between DOE's Pantex Site, which is located in the State of Texas, and NNSS.   SA at 10.   The plutonium would be "staged" (essentially stored) at the NNSS for an indefinite period of time before further shipment to Los Alamos National Laboratory, which is located in the State of New Mexico, where it will be used in nuclear weapons production.   SA at 10-11.   All such shipments will be in DOT-certified "9975-96" shipping containers "or equivalent."   SA at 12.   The shipping containers are described as 35-gallon stainless steel drums

containing fiber-board insulation, lead radiation shielding, and nested primary and secondary containment vessels fabricated from stainless steel pipe. SA at 12. The mode of transport would be trucks travelling in accordance with DOE's Secure Asset Transportation Program. SA at 16. The SA was prepared pursuant to DOE's NEPA regulation at 10 C.F.R. § 1021.314(c), which requires an SA "[w]hen it is unclear whether or not an EIS supplement is required." The SA purported to justify NNSA's decision not to prepare any supplemental environmental impact statement for the proposed action.

3. Plutonium is a heavy metal and therefore toxic to humans. Plutonium-239 (Pu-239) is a radioisotope of plutonium with a half-life of 24,100 years. It decays by emitting an alpha particle (a helium atom). Alpha particles can be dangerous when they directly impact cells in the human body via ingestion or inhalation. Inhalation of Pu-239 particles of about 10 microns is particularly risky. Particles of this size can be inhaled and deposited in the lung—allowing the alpha particles to directly impact lung cells. The deposition of alpha emitting Pu-239 particles in the lung can raise the risk of cancer in an individual; the level of risk is increased with increased exposure. *See* Affidavit of Timothy A. Frazier, Exhibit B.

4. Pu-239, the subject of the shipments at issue here, is a fissile material that can fission and release large amounts of energy. Pu-239 metal is used in the fabrication of nuclear weapon "pits." A pit is the component of the nuclear weapon that is imploded by conventional explosives to a super-critical mass and then bombarded by neutrons to create the huge release of energy and an explosion. In thermonuclear weapons, this energy is used to drive the explosion of a secondary pit—made of highly-enriched uranium—and an even larger release of energy and explosion. Pu-239 metal particles or tailings (from machining) can ignite in the presence of moist air. There have been two fires at the Rocky Flats Plant outside Denver, Colorado—which made Pu-239 pits—resulting from finely divided Pu-239 particles. The fires resulted in a release of Pu-239 into the environment. *Id*.

/ / /

5.      Nevada seeks declaratory relief that the Defendants have violated, and remain in violation of, NEPA, the implementing regulations of the Council on Environmental Quality at 40 C.F.R. § 1502.9(c)(1), and DOE's NEPA regulation at 10 C.F.R. § 1021.314(a), by failing to prepare a supplemental draft and final environmental impact statement for the new proposed action.   Nevada also seeks injunctive relief directing Defendants not to ship any plutonium from Savannah River or Pantex to the NNSS pending full compliance with NEPA and the above cited regulations.

## II. PARTIES

6.      Plaintiff Nevada is a sovereign state of the United States of America.

7.      Defendant United States is the federal government of the United States of America, and includes all of its federal corporations, departments, agencies, commissions, boards, instrumentalities, entities, and officials acting in their official capacities of same, including DOE and NNSA.

8.      Defendant DOE is a federal agency of the United States.

9.      Defendant NNSA is semi-autonomous agency within the United States Department of Energy and is responsible for, among other things, the administration of federal programs concerning the production of nuclear materials for the weapons program, the production of nuclear weapons, and the safe and secure storage and transportation of nuclear materials related thereto, such as plutonium.   *See* 42 U.S.C. §§ 7111, *et seq.*

10.      Defendant Rick Perry is the United States Secretary of Energy (Secretary of Energy) and is sued in his official capacity.   The Secretary of Energy is responsible for the administration, operations, and activities of DOE, including the administration of programs related to NNSA.

11.      Defendant Lisa E. Gordon is the Administrator of the NNSA and Undersecretary for Nuclear Security (Administrator) and is sued in her official capacity. The Administrator is responsible for the administration, operations and activities of NNSA.

### III.  JURISDICTION

12.    Jurisdiction is proper in this Court pursuant to 28 U.S.C.A. §§ 1331 and 1346(a)(2) since this action involves the United States as a defendant and arises under the laws of the United States.   Jurisdiction is also proper in this Court pursuant to 28 U.S.C.A. § 1361 since Plaintiff seeks to compel Defendants to perform a duty under the laws of the United States.

### IV.  CAUSE OF ACTION

13.    5 U.S.C. § 702 gives Nevada the right to seek judicial review of NNSA's SA, and 5 U.S.C. § 706(2)(A) provides specifically that the reviewing court shall hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### V.  VENUE

14.    Venue is proper in this Court pursuant to 28 U.S.C.A. §§ 1391(b)(2), (e)(1)(B) and (e)(1)(C) since a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, since the NNSS is located in this judicial district, and since the Plaintiff resides in this judicial district.

### VI.  STANDING

15.    There will be an injury to the NEPA decision-making process that is incapable of repair if the plutonium shipments are allowed to proceed without preparation of draft and final supplemental environmental impact statements.   This is because once the plutonium is transported out of South Carolina to the NNSS, Nevada will forever lose the ability to formally comment upon safety and environmental concerns related to the shipments.   *See* Affidavit of Robert J. Halstead, Exhibit C.   Moreover, DOE officials have refused to assure Nevada that the shipments will be made in certified "Type B" packages, which are packages designed to withstand severe accidents in transit, *see, e.g.*, 10 C.F.R. § 71.51, or even that the shipments will be made with the same safety and security protections that apply generally to other shipments of weapons-grade plutonium.   Affidavit of Pam Robinson regarding DOE meeting, Exhibit D; Halstead

Affidavit, Exhibit C.  Without this information, Nevada is unable to evaluate the safety or security of the proposed shipments, and is unable to assure its citizens that they will be safe or to discharge its sovereign duty to be prepared to assist responders if an accident occurs.  *See* Halstead Affidavit, Exhibit C, ¶¶ 7-8, 10-18.

16.     Finally, the proposed action will result in increased radiation doses to Nevada citizens and would, in some circumstances, lead to contamination of the lands and the groundwater of Nevada with radioactive materials.  Nevada's sovereign interests are injured because, under Nevada law, all water, both surface and underground, is owned by the people of Nevada and administered by the State of Nevada.  *See* Halstead Affidavit, Exhibit C, ¶ 8.

## VII.  LEGAL BACKGROUND

### A.     Order of the South Carolina Court

17.     The State of South Carolina filed a complaint in U.S. District Court in South Carolina alleging that all of the same Defendants here failed to adhere to statutory obligations contained in 50 U.S.C.A. § 2566.  *See South Carolina v. U.S.*, 2017 WL 7691885 (D.S.C. Dec. 20, 2017), *aff'd*, 907 F.3d 742 (4th Cir. 2018).  Facts underlying that complaint that are relevant to the matters at issue here are summarized below.

18.     In early 2000, DOE decided to construct and operate a mixed plutonium-uranium oxide nuclear fuel fabrication facility ("MOX Facility") at the Savannah River Site as a means of disposing of excess plutonium.  By statute, if DOE's MOX production objective is not achieved by January 1, 2014, then "the Secretary shall remove" from South Carolina "not less than one metric ton of defense plutonium" by no later than January 1, 2016.  50 U.S.C.A. § 2566(c)(1).  The statute requires the removal of the defense plutonium to be consistent with NEPA and other applicable laws.  Defendants conceded that there is no dispute that the MOX production objective was not achieved by January 1, 2014, or thereafter, and also conceded that the Secretary of Energy did not remove from South Carolina one metric ton of defense plutonium by January 1, 2016.

/ / /

19.    The court rejected Defendants' argument that the court should only impose a target or estimated date for removal.  Defendants argued that there was no indication that other removal methods would be faster than their favored down blending method. *South Carolina v. U.S.*, 2017 WL 7691885 at *2.  Because an option involving down blending (diluting) and then disposing of the diluted plutonium could result in the removal of one metric ton of material no earlier than 2025, Defendants asserted that a two-year deadline would be impossible to meet.  *Id*.  Defendants requested an injunction that did not require them to remove a single metric ton until 2025.  *Id*. at *3.  The court rejected this argument and ordered that Defendants had two years from the date of the injunctive order, or at most until January 1, 2020, to remove the one metric ton of defense plutonium.  *Id*. at *5.  The court declined to direct Defendants on how they must obtain funding for the removal.  *Id*. at *3.

20.    South Carolina requested that the court require Defendants, if necessary for removal, to initiate a NEPA review within 60 days after the injunction was ordered and to take all steps necessary to complete the NEPA review and comply with any other applicable laws.  *Id*. at 8.  The court declined to issue such an order and instead elected to simply abide by the language of the statute and ordered that the Secretary of Energy must, *consistent with the NEPA and other applicable laws*, remove from South Carolina for storage or disposition elsewhere one metric ton of defense plutonium.  Specifically, the court ordered:

> Within two years from the date of the entry of this injunctive order (or at the latest by 1/1/2020), the Secretary of Energy shall, consistent with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, and other applicable laws, remove from the State of South Carolina, for storage or disposal elsewhere, not less than one metric ton of defense plutonium or defense plutonium materials, as defined by 50 U.S.C. § 2566.

*Id*. at 10.

21.    DOE delivered its first required Progress Report dated June 13, 2018 (filed June 15, 2018) (attached here as Exhibit E), asserting that down blending of plutonium is the "only viable methodology for long term disposal of surplus defense plutonium."

DOE Progress Report at 2.  DOE said it also re-examined a possible alternative method—

"shipping and staging outside of South Carolina." *Id*. at 4.  As far as conducting the

required NEPA analysis, DOE said "the NEPA analysis for movement of material could

possibly be completed by the fall of 2018." *Id*. at 5.  The subject NEPA analysis is the SA,

which, amazingly, DOE was able to complete the very next month (July 2018).

22.   On October 26, 2018, the U.S. Court of Appeals for the Fourth Circuit,

on consideration of DOE's appeal of the District Court's decision and injunction,

affirmed the District Court's injunction.  *South Carolina v. U.S., et al.*, 907 F.3d 742

(4th Cir. 2018).

**B.   National Environmental Policy Act**

23.   Federal agencies that have prepared an environmental impact statement

("EIS") cannot simply rest on the original document as circumstances change or new

actions are taken over time.  Rather, federal agencies must prepare a Supplemental EIS if

there are substantial changes to the proposed federal action that are relevant to

environmental concerns, or if there are significant new circumstances or information

relevant to environmental concerns and bearing on the actions or its impacts.  40 C.F.R.

§ 1502.9(c); 10 C.F.R. § 1021.314.  The SA at issue here purports to document that the

proposed action does not represent a substantial change, relevant to environmental

concerns, to actions addressed in previous EISs, or present any significant new

circumstances or information relevant to environmental concerns and bearing on the

actions or its impacts.  As will be explained below, the SA utterly fails to do so, and is

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

### VIII.  FACTUAL ALLEGATIONS

24.   As noted, the Defendants propose to ship one metric ton (~2,200 pounds)

of plutonium from DOE's Savannah River Site, which is located in the State of

South Carolina, to the DOE's NNSS, which is located approximately 90 miles northwest

of the City of Las Vegas, Nevada, and it is possible that Defendants may also ship the

same plutonium between DOE's Pantex Site, which is located in the State of Texas, and

NNSS.  By its nature, the SA skirts the question of whether the proposed action is a major federal action that will or may significantly affect the environment.  Instead DOE claims that the proposed action does not constitute a significant change from actions previously analyzed in various EISs and does not present any significant new circumstances or information relevant to environmental concerns and bearing on the actions or their impacts not evaluated previously.  SA at iii and 8, Exhibit A.

25.    The SA is manifestly deficient in a number of critical respects.  First, neither the SA nor any of the referenced DOE environmental impact statements discuss alternatives to the proposed action, except the "no-action" alternative, which is rejected in the SA because DOE asserts that a court order requires it to ship one metric ton of plutonium out of the Savannah River Site in South Carolina by January 1, 2020.  SA at 10.   There is no mention or evaluation of at least five viable alternatives: (1) shipping to the Y12 National Security Complex in Oak Ridge, Tennessee; (2) shipping to the Pantex Plant in Amarillo, Texas; (3) shipping to the Sandia National Laboratory in Albuquerque, New Mexico; (4) shipping to the Kirkland Air Force Base in Albuquerque, New Mexico; and (5) shipping to the Los Alamos National Laboratory in Los Alamos, New Mexico (LANL).    Any of these alternatives should pose less risk and less environmental impacts than shipping the one metric ton of plutonium to the NNSA for eventual shipment to LANL.  *See* Affidavit of Timothy A. Frazier, Exhibit B, ¶ 8.

26.    None of these alternatives is precluded by the South Carolina Court's decision.  The alternatives would avoid the significant environmental impacts associated with shipping the material hundreds of extra miles west to the NNSS in the State of Nevada and then again shipping the material hundreds of extra miles back east to Los Alamos National Laboratory, its ultimate destination.

27.    The SA fails to provide crucially important information needed for comparing the transportation impacts of alternatives to the proposed action, specifically, the nominal shipping distance for direct transportation of plutonium from SRS to Los Alamos National Laboratory (LANL).   This information is not provided in the

relevant SA tables (Tables 3-4, 3-5, and 3-14, SA at 25, 36).  One of the SA references (but not the SA itself), DOE 2015, Table E-1 (attached here as Exhibit F) provides this distance as 2,798 kilometers, or 1,739 miles.  According to the same table, the nominal distance between SRS and NNSS is 3,879 kilometers, or 2,410 miles.  The nominal distance between NNSS and Los Alamos National Laboratory (LANL) is 1,250 kilometers, or 777 miles.  Shipping plutonium from SRS to LANL by way of NNSS results in a combined nominal shipment distance of 3,187 miles (5,129 kilometers), about 1,448 miles longer than direct shipment from SRS to LANL (1,739 miles), an increase of about 83 percent.  *See* Affidavit of Robert J. Halstead, Exhibit C, ¶¶ 19-25.

28.     The requirement to consider alternatives lies at the heart of NEPA.  The fact that alternatives are not addressed in any of the referenced prior DOE EISs establishes that the proposed action at issue here constitutes a substantial change, relevant to environmental concerns, to actions addressed in previous EISs.

29.     Second, the SA fails to consider significant new transportation circumstances in Nevada, and fails to provide any new information relevant to current and near-term transportation environmental concerns in Nevada.  Under the proposed action, shipments of plutonium from SRS or Pantex to NNSS, upon reaching the State of Nevada, would use some combination of the highway routes to NNSS identified in the 2013 NNSS Site-wide EIS.  However, the information regarding the Las Vegas metropolitan area used for transportation impact evaluations and risk calculations in the 2013 NNSS Site-wide EIS is now out of date.  New information for the evaluation of transportation impacts is required because of massive recent and ongoing highway construction projects in the Las Vegas metropolitan area, and because of significant changes in population and population density, location of schools and other difficult-to-evacuate facilities, commodity flows (including hazardous materials), daily traffic counts, and accident and incident rates.  The 2013 NNSS Site-wide EIS can no longer be used for route selection, safety and security planning, or for transportation impact evaluations, / / /

1  including risk assessment.  None of the other DOE EISs referenced in the SA provide this

2  new information.  *See* Affidavit of Robert J. Halstead, Exhibit C, ¶ 24.

3       30.  Third, the SA does not include any independent analysis of the

4  environmental impacts from the new plutonium shipments to Nevada.  Instead, since the

5  purpose of the SA is to show that these impacts are adequately addressed in prior

6  DOE EISs, the SA cites specifically to five tables of transportation environmental impacts

7  contained in two of its previous EISs.  There are no other references, so this Court is

8  entitled to look to those five tables to determine whether, in fact, the new plutonium

9  shipments constitute a substantial change, relevant to environmental concerns, to actions

10  addressed in previous EISs, or present significant new circumstances or information

11  relevant to environmental concerns and bearing on those actions or their impacts not

12  discussed therein.

13       31.  Some of the listings in the tables apply only to transporting low-level

14  radioactive waste, not the Pu-239 at issue here, which will be used to fabricate pits for

15  nuclear weapons.  Therefore, those listings are not relevant.

16       32.  For radiological impacts associated with transportation accidents, the SA

17  first refers the reader to Table E-6 of DOE's 2015 Final Surplus Plutonium Disposition

18  SEIS (DOE EIS-0283-S2) (DOE's 2015 EIS (*see* Exhibit G).  SA at 26.  Table E-6 of

19  DOE's 2015 EIS includes only two entries that could conceivably be relevant:  (1) the

20  entry under "All STA Routes, PCDF at F Area at SRS," and (2) the entry under "All STA

21  Routes, PF-4 at LANL."[1]  However, Table E-6 does not describe the specific non-waste

22  radioactive materials being shipped or whether the shipments go through urban areas

23  like Las Vegas.  In addition, DOE concedes that the actual highway routes to be used for

24  the proposed Pu-239 shipments to NNSS may differ from those analyzed in the

25  2015 Analysis.  SA at 21.  Further, Table E–5 of the 2015 EIS, entitled, "Risk Factors per

26

27      [1] "STA" refers to secure transportation asset.  "PCDF" refers to pit conversion and disassembly and conversion facility.  "SRS" refers to the Savannah River Site, the origin of the plutonium at issue in this Complaint.  "PF-4" refers to plutonium facility.  "LANL" refers to the Los Alamos National Laboratory, the

28  ultimate destination of plutonium at issue in this Complaint.

Shipment of Radioactive Material and Waste" (attached hereto as Exhibit H), contains no entry for shipments of the specific plutonium at issue here. The specific material that DOE proposes to ship to NNSS (and/or Pantex) is described as "plutonium materials identified for use in future pit production at LANL." This material is already "packaged in 3013 containers" and "would be retrieved from the storage array" in the K-Area at SRS. SA at 12. Therefore, the SA does not show that the environmental impacts of these specific new plutonium shipments were covered in the DOE's 2015 Analysis. Accordingly, the EA does not establish that the proposed action constitutes no substantial change, relevant to environmental concerns, to actions addressed in Table E-6, and does not establish that the proposed action presents no significant new circumstances or information relevant to environmental concerns.

33.     The entries in Table E-6 also contain a significant defect, even if they could be deemed relevant to this proposed new action. NEPA requires that the frequencies (or probabilities) of accidents and their associated consequences *both* be disclosed. Table E-6 presents only risk numbers which, in the case of transportation accidents, are the multiplication products of three terms:  (1) the assumed accident frequency or frequencies; (2) the calculated radiological impacts of transportation accidents measured in rems (a common measure of radiation dose); and (3) the correlation between rems and premature cancers. The second term—calculated radiological impacts—is not disclosed. Therefore, Table E-6 in the DOE 2015 Analysis provides no useful information about the actual environmental impacts from any Pu-239 transportation accidents in the State of Nevada, let alone Las Vegas, assuming they occur. Without this information, it simply cannot be determined whether the impacts from transportation of one metric ton of plutonium are addressed in the 2015 EIS. Therefore, once again, the EA does not establish that the proposed action constitutes no substantial change, relevant to environmental concerns, to actions addressed in Table E-6, and does not establish that the proposed action presents no significant new circumstances or information relevant to environmental concerns.

34.     The SA also refers the reader to Table E-8 and Table E-12 of DOE's 2015 Analysis (attached hereto as Exhibit I).  SA Table E-7 at 28, Table E-10 at 33, and Tables E-11 and E-12 at 34.  However, Table E-12 does not address any transportation accidents involving the specific material that DOE would ship under the proposed action, plutonium intended for future pit production at LANL.  Table E-8 applies only to transportation risks for the MOX Fuel Alternative (rejected by DOE), and in any event, is similar to Table E-6 discussed above—it provides only risk numbers and offers no useful information about the actual environmental impacts from transportation accidents in the State of Nevada, or Las Vegas, assuming they occur.  Without this information, it simply cannot be determined whether the impacts from transportation of one metric ton of plutonium in Nevada, including Las Vegas, are addressed in the 2015 EIS.  Therefore, once again, the EA does not establish that the proposed action constitutes no substantial change, relevant to environmental concerns, to actions addressed in Table E-8, and does not establish that the proposed action presents no significant new circumstances or information relevant to environmental concerns.

35.     The SA further refers the reader to Table E-13 and Table E-14 of yet another document, DOE's 2013 Final Site-Wide Environmental Impact Statement for the Continued Operation of the Department of Energy/National Nuclear Security Administration Nevada National Security Site and Off-Site Locations in the State of Nevada (DOE-EIS-0426) (DOE's 2013 EIS) (attached here as Exhibit J).  SA at 28, 33. Neither of these tables specifically addresses any transportation impacts involving the specific material that DOE would ship under the proposed action, plutonium intended for future pit production at LANL.  Table E-13 of DOE's 2013 EIS is irrelevant because it addresses only the transportation of radioactive waste, not Pu-239.  Table E-14 of DOE's 2013 EIS is potentially relevant because it contains entries for transportation of special nuclear material and all forms of plutonium are special nuclear material, but again this is not the specific material that would be shipped under the proposed action. However, like Tables E-6 and E-8 of DOE's 2015 Analysis discussed above, Table E-14 of

DOE's 2013 EIS presents only risk numbers—impacts from transportation accidents are not disclosed. Therefore, once again, the EA does not establish that the proposed action constitutes no substantial change, relevant to environmental concerns, to actions addressed in Table E-14, and does not establish that the proposed action presents no significant new circumstances or information relevant to environmental concerns.

36.    The SA's failure to refer to any specific EIS wherein the consequences of transportation accidents for Pu-239 shipments in Nevada (including Las Vegas) are disclosed is an especially serious defect. Tables L-8 and L-9 in DOE's 1999 Final Plutonium Disposition Environmental Impact Statement (DOE-EIS-0283) (DOE's 1999 EIS) (attached here as Exhibit K) show that (1) an individual located 300 feet away from a transportation accident site involving plutonium dioxide would receive a radiation dose as high as 684 rems, which more likely than not will be lethal; (2) the total radiation dose to an exposed urban population from transportation accidents involving plutonium dioxide will be 228,760 rem, resulting in 114 cancer fatalities; and (3) the total radiation dose to an exposed urban population from transportation accidents involving plutonium pits will be 31,960 rem, resulting in 16 cancer fatalities. These very large radiation doses assume that only ten percent of the contents of the truck shipments are released at ground level in a transportation accident. Obviously, the consequences will be much more severe if the accident causes more materials to be released.

37.    Fourth, the Pu-239 to be transported to the NNSS will be "staged" at the NNSS for an indefinite period of time, and the SA assumes that the existing facilities and safety procedures at NNSS are adequate for that purpose and will be in place for an equally indefinite period of time. The referenced EISs do not address what the environmental impacts would be if, at some indefinite time in the future, the facilities used at NNSS to "stage" the plutonium deteriorate or if there is an inadequate compliance with safety procedures. Accordingly, the proposed action would give rise to significant new information relevant to environmental concerns and bearing on those actions or their impacts.

38.     Fifth, even if it could be assumed that the proposed shipments of plutonium were included among the actions described and addressed in the prior cited DOE EISs, those EIS's are inadequate and do not satisfy NEPA because they do not disclose the consequences of transportation accidents.

39.     Finally, DOE failed to consider cumulative impacts.  The shipment of this one metric ton of Pu-239 from the Savannah River Site to NNSS cannot be viewed in complete isolation.  The United States has pledged to dispose of 34 metric tons of surplus, weapons-grade plutonium.  The United States had planned to dispose of the plutonium by irradiating it as so-called MOX fuel—a mixture of plutonium and uranium oxides—in modified commercial nuclear reactors.  However, due to a significant rise in the cost of such a plan, DOE recently proposed terminating the MOX approach in favor of a dilute and dispose approach.  Under the new dilute and dispose approach, Pu-239 would be diluted with inert material and then disposed of at DOE's Waste Isolation Pilot Plant (WIPP) located in the State of New Mexico.  However, DOE does not have sufficient space at WIPP to dispose of all the surplus plutonium.  *See* GAO Report 17-390, "Plutonium Disposition, Proposed Dilute and Dispose Approach Highlights Need for More Work at the Waste Isolation Pilot Plant," dated September 2017, "highlights" page (attached here as Exhibit L).

40.     Clearly, there is no reasonably foreseeable final resting place or disposal option for these 34 metric tons of surplus, weapons-grade plutonium.  Nevada is rightly concerned that the one metric ton of plutonium, which is the subject of the SA, is merely the first step in a series of connected actions that will result in the transportation of the entire plutonium surplus to the NNSS in Nevada.  The statute at issue in the South Carolina litigation, 50 U.S.C. § 2566(c), provides that in the event of a failure of the MOX project to process plutonium into reactor fuel, DOE "shall, consistent with the National Environmental Policy Act of 1969 and other applicable laws, remove from the State of South Carolina, for storage or disposal elsewhere—(1) not later than January 1, 2016, not less than 1 metric ton of defense plutonium or defense plutonium materials; and

(2) not later than January 1, 2022, an amount of defense plutonium or defense plutonium materials equal to the amount [transferred to the SRS after April 15, 2002, that remains unprocessed]."   Accordingly, the law provides for an additional closely related proposed action by DOE—the removal and transportation from South Carolina of additional tons of plutonium.   Moreover, given DOE's refusal to consider viable and reasonable alternatives to the NNSS for staging (indefinite storage) of the one metric ton of plutonium covered by paragraph (1) and addressed in the SA, it is reasonably foreseeable that the NNSS will be used for future staging (indefinite storage) of the additional tons of plutonium required to be removed from South Carolina by paragraph (2).   The SA does not evaluate these additional necessary DOE actions, much less refer to portions of previous environmental impact statements where the cumulative environmental impacts of shipping and staging both the one metric ton and future tons of plutonium were discussed.   *See* Halstead Affidavit, Exhibit C, ¶¶ 25-26.

There have been information exchanges between DOE and Nevada regarding the proposed transport of the one metric ton of Pu-239 to the NNSS, but they have been incomplete and unsatisfactory.   These exchanges began in April 2018 when DOE first informed Nevada of a potential proposal to ship plutonium from South Carolina to Nevada.   On approximately August 28, 2018, DOE informed Nevada that a SA would be prepared to support the proposed shipment of one metric tons of plutonium to the NNSS in Nevada.   A copy of the SA was posted to the DOE website on August 30, 2018.   Nevada Governor Sandoval addressed his concerns with the proposal in a phone call with defendant Secretary Perry on September 7, 2018.   Governor Sandoval specifically expressed concerns regarding the adequacy of the SA and the lack of a timeline for storage and removal.   During that phone call, the Governor and the Secretary agreed that their staffs would schedule a second call to discuss the plan specifics.   A second phone call took place on September 14, 2018.   During this phone call, DOE specifically declined to identify any additional information related to the timeline for the transportation or the form/type of plutonium to be shipped.   *See* Affidavit of Pam Robinson, Exhibit D.

41.     Following the September 14, 2018, call, Governor Sandoval sent a letter to DOE Secretary Perry, dated September 28, 2018, reiterating the State's opposition to the proposed shipments given the lack of a concrete plan and schedule for disposition, reliance on inadequate NEPA analyses, and insufficient opportunity for public input from Nevada stakeholders.  A meeting of a Nevada-DOE working group then took place on October 30, 2018.  At this meeting, Nevada again expressed its concerns about the proposed shipments and, again, received no satisfactory answers.  On November 8, 2018, Nevada sent a final letter to DOE requesting, among other things, that:  (1) DOE provide a timeline for removal of the plutonium from Nevada; (2) DOE assure Nevada that all plutonium shipments will be made with the same safety and security protections that apply generally to shipments and handling of weapons-grade plutonium; (3) DOE assure Nevada that, as per other hazardous materials, the shipments would avoid the highly populated areas of Las Vegas and that DOE would consult, as appropriate, with Nevada officials with the objective of avoiding other routes that may contain unusual hazards; and (4) DOE would not ship more than one metric ton of plutonium from the Savannah River Site in South Carolina to the NNSA in Nevada without consultation with Nevada and preparation of an environmental impact statement or supplemental environmental impact statement addressing the new shipments.  *Id.*

On November 20, 2018, DOE replied to Nevada's November 9, 2018, letter.  DOE's letter provided none of the assurances Nevada requested.  Instead, DOE touted its safety and security record, insisted that its SA was adequate, stated that the shipments would be completed by the end of 2019, and stated that "[w]e expect the material staged at NNSS to be prioritized for removal and transferred to LANL by the 2026-2027 timeframe." *Supra.*

## IX.  CLAIMS FOR RELIEF

### First Claim – Defendants Violated the National Environmental Policy Act

42.     Plaintiff hereby incorporates by reference all preceding paragraphs.

/ / /

-17-

43.     NEPA requires federal agencies, such as DOE, to prepare an environmental impact statement for every "recommendation . . . on proposals for major federal actions significantly affecting the quality of the human environment."   DOE violated this statutory requirement by not preparing a supplemental environmental impact statement for this new proposed action.

**Second Claim – Defendants Violated the Council on Environmental Quality Regulations**

44.     The Council on Environmental Quality's NEPA regulations require agencies, such as DOE, to prepare a supplemental EIS if (1) the agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (2) there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.  40 C.F.R. § 1502.9(c)(1).  DOE violated this regulatory requirement by not preparing a supplemental environmental impact statement for this new proposed action.

**Third Claim – Defendants Violated Their Own Regulations**

45.     DOE's NEPA regulations require that a supplemental EIS be prepared if (1) the agency makes substantial changes in the proposed action, or (2) there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.  10 C.F.R. § 1021.314(a).  DOE violated this regulatory requirement by not preparing a supplemental environmental impact statement for this new proposed action.

**X.  RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     A declaration and order that the Defendants' actions violate NEPA, and CEQ and DOE implementing regulations;

B.     An order setting aside and vacating the SA;

/ / /

C. An order enjoining the Defendants from authorizing or allowing or otherwise acting to ship any plutonium, including Pu-239, from the Savannah River Site to the NNSS, or from Pantex to the NNSS, until Defendants properly comply in full with NEPA and CEQ and DOE NEPA regulations;

D. A declaration and order retaining jurisdiction over this matter regarding Defendants' compliance with NEPA, CEQ, and DOE regulations, and this Court's orders;

E. An order that awards the Plaintiff their costs, expenses, expert witness fees and reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C.A. § 2412; and

F. An order granting Plaintiff such further or other relief as may be deemed just, proper, and equitable.

DATED this 30th day of November, 2018.

ADAM PAUL LAXALT
Attorney General

By:  /s/ C. Wayne Howle
C. WAYNE HOWLE (Bar No. 3443)
Chief Deputy Attorney General
DANIEL P. NUBEL (Bar No. 13553)
Deputy Attorney General

By:  /s/ Marta Adams
MARTA ADAMS (Bar No. 1564)
Special Deputy Attorney General

EGAN, FITZPATRICK, MALSCH &
LAWRENCE, PLLC

By:  /s/ Martin G. Malsch
MARTIN G. MALSCH
Special Deputy Attorney General

**INDEX OF EXHIBITS**

| Exhibit No. | Exhibit Description | Number Of Pages |
|---|---|---|
| A. | NNSA's Supplemental Analysis, dated July 2018, for its Final Complex Transformation Supplemental Programmatic Environmental Impact Statement (DOE/EIS-0236-S4) | 57 |
| B. | Affidavit of Timothy A. Frazier | 3 |
| C. | Affidavit of Robert J. Halstead | 51 |
| D. | Affidavit of Pam Robinson *(To be filed subsequent to the Complaint)* | – |
| E. | DOE Progress Report dated June 13, 2018 (filed June 15, 2018) | 6 |
| F. | Table E-1 of DOE's 2015 Final Surplus Plutonium Disposition SEIS (DOE EIS-0283-S2) (DOE's 2015 EIS), entitled "Offsite Transport Truck Transportation Route Characteristics" | 1 |
| G. | Table E-6 of DOE's 2015 EIS entitled "Risks of Transporting Radioactive Material and Waste – No Action Alternative" | 1 |
| H. | Table E-5 of DOE's 2015 EIS entitled "Risk Factors per Shipment of Radioactive Material and Waste" | 1 |
| I. | Table E-8 and Table E-12 of DOE's 2015 EIS entitled "Risks of Transporting Radioactive Material and Waste – MOX Fuel Alternative" and "Estimated Dose to the Population and to Maximally Exposed Individuals Under the Maximum Reasonably Foreseeable Accident" | 4 |
| J. | Table E-13 and Table E-14 of DOE's 2013 Final Site-Wide Environmental Impact Statement for the Continued Operation of the Department of Energy/National Nuclear Security Administration Nevada National Security Site and Off-Site Locations in the State of Nevada (DOE-EIS-0426) (DOE's 2013 EIS) entitled "Risks of Transporting Radioactive Waste Under Each Alternative – Constrained Case" and "Risks of Transporting Radioactive Materials Under Each Alternative – Constrained Case" | 4 |

| Exhibit No. | Exhibit Description | Number Of Pages |
|---|---|---|
| K. | Tables L-8 and L-9 in DOE's 1999 Final Plutonium Disposition Environmental Impact Statement (DOE-EIS-0283) (DOE's 1999 EIS), entitled "Estimated Dose to the Population and to Maximally Exposed Individuals During the Most Severe Accident Conditions (Plutonium Oxide)" and "Estimated Dose to the Population and to Maximally Exposed Individuals During the Most Severe Accident Conditions (Plutonium Pits)" | 2 |
| L. | GAO Report 17-390, "Plutonium Disposition, Proposed Dilute and Dispose Approach Highlights Need for More Work at the Waste Isolation Pilot Plant," dated September 2017, "highlights" page | 1 |