UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STATE OF NEVADA,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES; *et al.*,<br><br>Defendants. | Case No. 3:18-cv-569-MMD-CBC<br><br>ORDER |

**I.    SUMMARY**

This case concerns the shipment and/or storage of weapons-grade plutonium allegedly in violation of, *inter alia*, the guidelines of the National Environmental Protection Act of 1969, 42 U.S.C. § 432 *et seq.* ("NEPA"). Before the Court is Plaintiff the State of Nevada's ("Nevada") motion for leave to file an amended complaint in light of revelations after the initial complaint in this case ("Motion for Leave"). (ECF No. 126.) The Court will grant the Motion for Leave in part and deny it in part, as explained below.

**II.    RELEVANT BACKGROUND**

Nevada brought this action originally challenging the federal government's ("Government") plan to ship one metric ton of weapons-grade plutonium from the Savannah River Site ("SRS") in South Carolina to the Nevada National Security Site ("NNSS") ("Proposed Action"). (ECF Nos. 1, 2.) On November 30, 2018, Nevada filed a motion for preliminary injunction ("PI Motion") seeking to prevent the Government, through its Department of Energy ("DOE")[1] from shipping the plutonium to NNSS before a ruling

///

---

[1] In addition to DOE, Nevada sues the United States Secretary of Energy, Rick Perry, in his official capacity, and the National Nuclear Security Administration ("NNSA") and its administrator, Undersecretary for Nuclear Security, Lisa E. Gordon, in her official capacity. (ECF No. 1 at 4.) These Defendants are collectively referred to as the Government.

on the merits of its case. (ECF No. 2.) The Court held an evidentiary hearing on the PI Motion on January 17, 2019. (*E.g.*, ECF No. 19.) [2]

Before the Court issued its ruling on the PI Motion, the Government submitted a Notice of New Information with a sworn declaration providing that shipment of one-half metric ton of plutonium to Nevada under the Proposed Action had been completed prior to November 2018—the month in which Nevada filed this lawsuit. (ECF Nos. 56, 56-1.) The Government also affirmed that no more plutonium will be shipped to NNSS as part of the Proposed Action. (ECF No. 58 at 2.) The Government informed that all other shipments of plutonium under the Proposed Action "are going elsewhere." (*Id.*) Later the same day, the Court denied Nevada's PI Motion on its merits ("PI Order"). (ECF No. 62.) Nevada filed on interlocutory appeal of the PI Order on February 4, 2019. (ECF No. 65.)

Nevada subsequently file a motion for preliminary injunction pending appeal ("PI Appeal Motion"). (ECF No. 69.) The Court denied the PI Appeal Motion as moot based on the Government's information and representation that no further shipments would be made to NNSS. (ECF No. 77.) The Court also later entered an order staying this case pending the Ninth Circuit Court of Appeals' decision on Nevada's interlocutory appeal. (ECF No. 112.) On appeal, the Ninth Circuit denied Nevada's request for preliminary injunction as moot because Nevada's injunction *sought only to* halt shipments that were already completed—not also to have such plutonium removed from NNSS. (ECF No. 115 at 6.)

Nevada then filed the Motion for Leave seeking to amend its complaint. (ECF Nos. 126, 126-1.) The proposed Amended Complaint ("AC") asserts six "claims." (ECF No. 126-1.) The first four "claims" seek declaratory judgment that the Government violated 42 U.S.C. § 4332(C), 40 CFR §§ 1501.4(b) and 1508.9, as well as 10 CFR § 1021.314. (*Id.*) The AC otherwise seeks to: (1) request the remedy of an order/injunction to remove the one-half metric ton of plutonium that unbeknownst to Nevada had been shipped to NNSS

///

---

[2] Additional background facts are recited in the Court's PI Order (ECF No. 62); the Court will not recount those facts here.

2

and now stored there; and (2) to add two new claims for nuisance—one based on the federal common law and the other under the Price-Anderson Act, 42 U.S.C. § 2210(n)(2). (*Id.*) The Government filed a response opposing the Motion for Leave (ECF No. 131) and Nevada replied (ECF No. 132).

### III.   LEGAL STANDARD[3]

After the time for amendment as a matter of course has expired, a party may amend its complaint only by leave of the court or by the adverse party's written consent. Fed. R. Civ. P. 15(a)(2). The court has discretion to grant leave and should freely do so "when justice so requires." *Id.; see also Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990); *Chodos v. West Pub. Co.,* 292 F.3d 992, 1003 (9th Cir. 2002) (leave to amend granted with "extreme liberality"). Nonetheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile.[4] *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

A proposed amendment is futile if no set of facts can be proved under the amendment that would constitute a valid claim or defense. *Farina v. Compuware Corp.,* 256 F. Supp. 2d 1033, 1061 (9th Cir. 2003) (quoting *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988)). The standard of review is akin to that undertaken by a court in determining the sufficiency of a pleading challenged in a Rule 12(b)(6) motion to dismiss. *Id.* (quoting *Miller,* 845 F.2d at 214). Under this standard, a district court must accept as true all well pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). When the claims in a complaint have not crossed the line from conceivable to

///

---

[3]When seeking leave to amend a pleading, Local Rule 15-1 requires the moving party to "attach the proposed amended pleading to any motion to amend so that it will be complete in itself without reference to the superseding pleading." LR 15-1(a).

[4]*See also Carrico v. City & County of San Francisco,* 656 F.3d 1002, 1008 (9th Cir. 2011) (explaining that leave to amend may be denied if the proposed amendment would be subject to dismissal).

3

plausible, plaintiff's complaint must be dismissed. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

## IV. DISCUSSION

The Court begins its analysis from the premise that leave to amend shall be freely given and with liberality. Within this framework, the Court considers the Government's contention that (1) Nevada should not be permitted to amend its complaint to seek removal of the plutonium from NNSS and (2) the additional claims for nuisance under the federal common law and the Price-Anderson Act would be futile. (ECF No. 131.) The Court addresses each of the Government's arguments in turn.

### A. Amendment to Seek Removal of the Plutonium from NNSS

The Government essentially contends that Nevada should be disallowed from amending its complaint to seek removal (or an injunction for removal) of the one-half metric ton of plutonium from NNSS because this request is inconsistent with Nevada's earlier contention that transportation of that plutonium through the state would cause irreparable harm. (ECF No. 131 at 5–7; ECF No. 126-1 (AC) at 5, 40.) Nevada counters, maintaining otherwise and arguing that it could not previously seek removal because the plutonium had not—to its knowledge—been delivered to NNSS. (ECF No. 132 at 3–6.) Nevada further argues that even if now seeking removal is inconsistent with prior allegations, contradictory pleadings are not improper in a successive pleading. (*Id.* at 5–6.) Without determining whether Nevada's position is in fact inconsistent, the Court finds the Government's argument is unsound.

The Ninth Circuit has held that the Federal Rules do not preclude a party from filing successive pleadings with inconsistent or even contradictory allegations absent a showing of bad faith. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11— inconsistent allegations are simply not a basis for striking the pleading."). Here, it would simply be disingenuous for the Government to even contend that Nevada acts in bad faith

in seeking to amend its complaint to request removal of the plutonium. Accordingly, heeding the mandate that leave shall be freely given, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court will permit amendment to allow Nevada to seek removal (or injunction to do the same) of the plutonium from NNSS.

### B. Whether Amendment to Permit Common Law Nuisance and Price-Anderson Act Claims Would be Futile

The Court partly agrees with the Government's position that permitting Nevada leave to amend to add Nevada's additional two claims for nuisance based on federal common law and under the Price-Anderson Act would be futile. Nevada's Motion for Leave will be granted as to the former but denied as to the latter.

### 1. Common Law Nuisance Claim

In arguing futility, the Government first claims that Nevada's assertion of a common law nuisance claim would be futile because the applicable federal common law *has been displaced* by two-federal statues—50 U.S.C. § 2566(c), which is specific to this case, and the Atomic Energy Act of 1954 ("AEC"). (ECF No. 131 at 7–10.)

"Federal courts develop common law 'in the absence of an applicable Act of Congress.'" *Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1230 (9th Cir. 2019) (citation omitted). "Post-*Erie*,[5] federal common law includes the general subject of environmental law"—including suits based on a theory of public nuisance. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 855 (9th Cir. 2012). However, "the right to assert a federal common law public nuisance claim has limits." *Id.* at 856. "Claims can be brought under federal common law for public nuisance only when the courts are 'compelled to consider federal questions which cannot be answered from federal statutes alone.'" *Id.* (quoting *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981)). The test for whether federal legislation excludes the federal common law "is simply whether the statute speak[s] directly to [the] question at issue." *Id.* (quotations and citation omitted). "The
///

---

[5]*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

1 | existence of laws generally applicable to the question is not sufficient; the applicability of
2 | displacement is an issue-specific inquiry." *Id.* at 856.

The Government argues that the statue mandating that the plutonium at issue be removed from SRS—50 U.S.C. § 2566(c)—bars a common law nuisance claim because the latter would be directly at odds with Congress's mandate of removal from SRS. (ECF No. 131 at 7–10.) Nevada counters that Congress has not spoken to the question directly at issue before the Court because 50 U.S.C. § 2566(c) only calls "for storage or disposal elsewhere"[6] and thus there has been no congressional directive or judgment to impact a common law nuisance claim as to NNSS particularly. (ECF No. 132 at 6–8.)

To the extent that 50 U.S.C. § 2566(c) does not mandate a particular destination for shipment and subsequent storage, the Court agrees with Nevada and finds that the statute does not preclude the precise common law nuisance contention Nevada makes here.[7] *See, e.g.*, *U.S. Army Corps of Engineers*, 758 F.3d 892, 901–92 (7th Cir. 2014) (providing that an "agency action that reflects only the agency's choice of a particular course of action to implement a policy may or may not be consistent with the underlying statute and regulations" and explaining that actions not directly required by Congress may give rise to a nuisance claim).

The Government's alternative contention under the AEC similarly does not bar Nevada's common law nuisance claim. (ECF No. 131 at 10.) The Government argues that the AEC fully authorizes the transportation and storage of plutonium because it authorizes DOE to "engage in the production of atomic weapons" and "to deliver such quantities of

///

---

[6]*See* 50 U.S.C. § 2566(c) ("If the MOX production objective is not achieved as of January 1, 2014, the Secretary shall, consistent with [NEPA] and other applicable laws, remove [the plutonium] from the State of South Carolina, for storage or disposal elsewhere . . . not later than January 1, 2022, an amount of defense plutonium or defense plutonium materials equal to the amount of defense plutonium or defense plutonium materials transferred to the Savannah River Site between April 15, 2002, and January 1, 2022, but not processed by the MOX facility.").

[7]The Government does not argue that this claim is ordinarily supplanted by NEPA.

special nuclear material or atomic weapons to the Department of Defense . . . in the interest of national defense." (*Id.* (quoting 42 U.S.C. § 2121(a)(2), (b)).) Nevada responds, highlighting that its claim is limited to this state (specifically NNSS) and concerns the conditions of storage in Nevada. (ECF No. 132 at 8–10.) Again, the Court agrees with Nevada that the Government has not shown that the AEC's generic authorizations immunize the Government/DOE from a public nuisance claim under the federal common law.

The Court therefore concludes that the Government fails to establish that Nevada's assertion of a common law nuisance claim would be futile and will thus permit Nevada to amend its complaint accordingly.

### 2. Price-Anderson Act Claim

The Court will deny Nevada's proposed amendment to add a sixth claim under the Price-Anderson Act. (ECF No. 126-1 at 38–40; ECF No. 132 at 10–12.) The Government contends that Nevada's allegations supporting this claim are factually deficient. (ECF No. 131 at 10–11). Nevada argues to the contrary. (ECF No. 132 at 10–12.) The Court agrees with the Government.

The Price-Anderson Act provides jurisdiction in federal courts for an "action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2). A "nuclear incident" is defined in the Act as "any occurrence, including an extraordinary nuclear occurrence, within the United States causing . . . bodily injury, sickness, disease, or death, *or loss of or damage to property, or loss of use of property.*" 42 U.S.C. § 2014(q) (emphasis added). In *In re Berg Litigation ("Berg")*, 293 F.3d 1127 (9th Cir. 2015), in the context of explaining what amounts to a "nuclear incident," the Ninth Circuit concluded "[p]hysical harm to persons or property is . . . a jurisdictional prerequisite." *Id.* at 1131.

The Court finds that on the face of the AC, Nevada alleges only abstract harm—mostly through nebulous allegations of increased radiation—or future risk of harm to Nevada's environment, natural resources and human health that the Court concludes is insufficient to meet the jurisdictional prerequisite. *See, e.g.*, ECF No. 126-1 at 25

7

("Increased radiation exacerbates the risk of environmental harm and the risk of harm from accident, intentional sabotage, or natural disaster."); *id.* at 29 ("The harm from increased radiation is occurring now and is ongoing while the plutonium remains at NNSS. The presence of the plutonium and increased radiation also increases the risk of future harm to natural resources and human health.") *id.* at 31 ("As a nearby landowner, Nevada is directly damaged by the spill-over effects from the increased radiation that South Carolina's plutonium causes at NNSS."); *id.* ("The increased radiation exposure is an ongoing, tangible, and unreasonable invasion of Nevada's rights to use its property and to have a clean and healthy environment. The radiation pollutes Nevada's environment and atmosphere."); *id.* ("The increased radiation also harms the communities close to NNSS."); *id.* ("The contamination and risk of harmful health effects are not limited to those individuals that work at NNSS. If contaminated, NNSS workers can carry radioactive material offsite on their persons, clothing, and vehicles and transfer it to members of the public. Moreover, State employees traveling and working nearby are exposed to the increased radiation."); *id.* at 32 ("In addition to the direct injury to Nevada's own sovereign interests, the increased radiation from the indefinite storage of South Carolina's plutonium at NNSS harms Nevada's quasi-sovereign and *parens patriae* interests in the general health, physical, and economic well-being of its citizens.") [8]

Accordingly, the Court denies leave to add a claim under the Price-Anderson Act.

///

///

///

///

---

[8] *Cf. e.g.*, *Lawson v. Gen. Elec. Co.*, 140 F. Supp. 3d 968, 972 (N.D. Cal. 2015) (concluding that a plaintiff's on-job exposure to nuclear radiation is "enough to constitute a nuclear incident"); *Sawyer v. Commonwealth Edison Co.*, 847 F. Supp. 96, 100 (N.D. Ill. 1994), disagreed with on other grounds by *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457–58 (7th Cir. 2005) (rejecting contention that the plaintiff's injury was not based on actual occurrence where complaint alleged that the plaintiff was exposed to radiation at levels sufficient to cause chronic myelogenous leukemia while working at plant); *but see In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 832 (S.D. Ohio 1995) (finding no "nuclear incident" occurred because nuclear medicine was being applied and there was no unintended escape or release of nuclear energy).

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Nevada's motion for leave to amend its complaint (ECF No. 126) is granted in part and denied in part. The motion is denied as to the proposed inclusion of a claim under the Price-Anderson Act. It is granted in all other respects.

DATED THIS 21st day of October 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE